IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEVERLY NESMITH,<br>    Plaintiff, | CIVIL ACTION |
| v. | |
| CATALENT USA PACKAGING, LLC,<br>    Defendant. | NO. 21-5594 |

## MEMORANDUM OPINION

Plaintiff Beverly Nesmith[1] brings discrimination claims against her former employer Catalent USA Packaging, LLC[2] for retaliation, disparate treatment, and hostile work environment in violation of 42 U.S.C § 1981 ("Section 1981") as well as interference with her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.* Defendant moves for summary judgment with respect to all of Plaintiff's claims.

For the reasons below, Defendant's motion shall be granted.

### I. FACTUAL BACKGROUND

Plaintiff began working for Defendant in 2000 at Defendants' Philadelphia facility, which packages clinical supplies. In 2013, she and other African American employees faced

---

[1] Nesmith is deceased, as represented by her counsel in a status conference on April 17, 2023 and in her summary judgment briefing, and her counsel has further represented that her daughter and executor wish to proceed with the case. Despite this Court's instruction during the April 17th status conference, her counsel has not yet filed a statement noting the Plaintiff's death pursuant to Federal Rule of Civil Procedure 25. Accordingly, the Court will refer to the original Plaintiff in the absence of any notification pursuant to Rule 25. *See, e.g.*, *Ralston v. Garabedian*, 603 F. Supp.3d 208, 212-13 (E.D. Pa. 2022) (proceeding to judgment with the original named parties where no one had yet filed a notice of death or moved to substitute pursuant to Rule 25).

[2] Catalent states it is improperly named in Plaintiff's Complaint as "Catalent Pharma Solutions." Plaintiff does not contest this. Accordingly, the caption reflects the updated business name.

1

harassment by other co-workers, who referred to them as "BLTs," a moniker meaning "Black Little Trouble Makers." The harassment led Plaintiff and two other employees to file a lawsuit against Defendant in 2016 in the Court of Common Pleas in Philadelphia County for violations of the Pennsylvania Human Relations Act and the Philadelphia Fair Practices Ordinance. *Nesmith v. Catalent Pharma Solutions*, No. 151000934 (Pa. Ct. C.P. February 8, 2016).[3] This prior lawsuit ended in a confidential settlement in which Plaintiff received a financial payment in exchange for a full release of the claims against Defendant up to the date of settlement.

Two more recent incidents, which form the basis for Plaintiff's claims in the instant suit, occurred years later in 2019. In the first, an African American employee—one of the plaintiffs in the prior lawsuit besides Plaintiff Nesmith—was told to "shut up" by a manager during a meeting. Plaintiff and other co-workers witnessed the incident. In the second, a Hispanic employee slapped a different African American employee. Plaintiff apparently did not witness the second incident herself. Plaintiff was not directly involved in either incident. The only evidence of the two incidents comes in the form of two of Plaintiff's answers to Defendant's interrogatories.

In addition to these two incidents, Plaintiff predicates her claims on actions that allegedly interfered with the exercise of her FMLA rights. In an answer to Defendant's interrogatories, Plaintiff states that two supervisors interfered with her FMLA rights because they "were making her do the more taxing job of bottle line instead of doing labeling" and further states that "Plaintiff was supposed to be on light duty according to her FML[A]. . . ." By this, Plaintiff appears to refer to different work assignments within the packaging center (*e.g.*, bottle line versus labeling) as well as the fact that she was granted FMLA leave under which she was

---

[3] A copy of the Complaint is included in the parties' joint appendix.

permitted to take two to three days of leave per month in light of a health condition.[4]

Throughout the course of her employment, Plaintiff was repeatedly disciplined for issues related to attendance and tardiness, reflected in a series of warning letters. Plaintiff also received warnings related to her work performance and workplace conduct. Roughly a week before her termination, Plaintiff was issued a written warning for being disrespectful towards a supervisor. When a supervisor attempted to meet with her to deliver the warning, she yelled at him and threw the warning back at him after he tried to hand it to her.

Defendant terminated Plaintiff on November 19, 2019. During her union's grievance process following the termination, Defendant offered her an opportunity to return to work in the form of a "last chance agreement" by which she could return to work on December 9, 2019 and be compensated for the time between her termination and rehiring. Under the agreement, she would also be subject to a set of performance and conduct rules, such as "[Plaintiff] will refrain from any and all forms of loudly vocalizing her displeasure with the [Defendant] within the production floor" and "[Plaintiff] will follow all instructions given to her by the Production management representatives." Plaintiff ultimately decided not to sign the agreement, nor did she otherwise return to work for Defendant.[5]

## II.  LEGAL STANDARDS

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to

---

[4] In referring to a "light duty" status as falling under her FMLA rights, Plaintiff appears to confuse leave benefits under the FMLA with reasonable accommodations under the Americans with Disabilities Act ("ADA"), as explained further with respect to Plaintiff's FMLA claim, *infra*. *See, e.g.*, *Cooper v. Cnty. of York*, 2022 WL 1810978, at *2 (M.D. Pa. June 2, 2022) (stating that allegations concerning a light duty status did not implicate FMLA leave or FMLA benefits). Plaintiff did not make a request for a reasonable accommodation and does not bring ADA claims in the instant suit.

[5] While the Complaint alleges that "Plaintiff was ultimately returned to work in or around December 2019," Plaintiff points to no record evidence supporting that she returned to work. To the contrary, the record supports that she never returned to work for Defendant.

3

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion." *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Id.* (citation omitted). A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323.

Because Plaintiff relies on circumstantial evidence, rather than direct evidence, of discriminatory animus to support her claims, the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to her disparate treatment and retaliation claims pursuant to Section 1981. *See Stewart v. Rutgers*, 120 F.3d 426, 431-32 (3d Cir. 1997); *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017).

Some of Plaintiff's claims, however, are not subject to the *McDonnell Douglas*

4

framework. Specifically, the Third Circuit has determined that the framework does not apply to hostile work environment claims, *see Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 n.11 (3d Cir. 2017); *Jarmon v. Trader Joe's Co.*, 2023 WL 2402874, at *5 (E.D. Pa. Mar. 8, 2023), or FMLA interference claims, *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017).

For those claims that are subject to the *McDonnell Douglas* burden-shifting framework, the first step dictates that Plaintiff bears the burden of making out a *prima facie* case of discrimination. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). "To establish a *prima facie* case at summary judgment, 'the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case.'" *Id.* (quoting *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001) (emphasis added)). If Plaintiff fails to raise a genuine dispute of material fact as to any element of her *prima facie* case, summary judgment in favor of Defendant is warranted. *Id.*

Once Plaintiff makes out her *prima facie* case, the burden of production shifts to Defendant to offer a "legitimate non-discriminatory [justification] for the adverse employment action." *Id.* (citing *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009)). If Defendant does so, the third step in the framework shifts the burden of production back to Plaintiff to "provide evidence from which a factfinder could reasonably infer that [Defendant's] proffered justification is merely a pretext for discrimination." *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994)).

To make a showing of pretext, Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [Defendant's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Id.* at 427 (quoting

5

*Fuentes*, 32 F.3d at 764).

### III.   DISCUSSION

#### A.   Shortcomings of Plaintiff's Summary Judgment Briefing

As a preliminary matter, Plaintiff's brief in response to Defendant's motion for summary judgment is wholly inadequate because it fails to cite to materials in the summary judgment record and fails to cite to relevant legal authority in support of its arguments.

Under Federal Rule of Civil Procedure 56, a party "asserting that a fact . . . is genuinely disputed must support the assertion by: citing to particular parts of materials in the record. . . ." Fed. R. Civ. P. 56(c)(1)(A).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. . . ."  Fed. R. Civ. P. 56(e)(2), (3).

While Plaintiff's lawyer submitted replies to Defendant's statement of facts along with her brief in response, he repeatedly cites to the allegations of her Complaint in support of her factual assertions rather than materials in the summary judgment record.  Plaintiff cannot rely on unsupported allegations in her Complaint to survive a motion for summary judgment.  *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Shah v. Bank of Am.*, 346 F. App'x 831, 833 (3d Cir. 2009).  Moreover, Plaintiff's lawyer repeatedly cites to a source referred to as "Notes of the Plaintiff," which he maintains he attached to his client's summary judgment response as "Exhibit A."  But no such exhibit is attached, nor does any such exhibit appear in the summary judgment record.  On that basis, Plaintiff fails to support those statements of fact that are purportedly based on "Notes of the Plaintiff."  Besides the allegations in her Complaint and

6

statements purportedly based on the absent "Notes of the Plaintiff" document, Plaintiff relies only on three answers to Defendant's interrogatories to support her responses to Defendant's statement of fact.

Moreover, in the body of her brief in response, Plaintiff fails to cite to any specific materials in the summary judgment record to support the factual assertions therein. That is, Plaintiff does not provide a *single* pincite in the body of her brief to support the factual assertions made in support of her argument.

Nor are these the only shortcomings of Plaintiff's briefing. While Plaintiff refers to relevant legal authorities to set forth the standard *prima facie* elements required to support her claims, she otherwise fails to cite any legal authority in support of her arguments fleshing out her *prima facie* case. To offer just one example, while Plaintiff maintains that her "2016 racial discrimination lawsuit against [Defendant] is protected employee activity" and "Defendant's decision to fire Plaintiff . . . then after re-hiring Plaintiff a month later . . . deny Plaintiff a reasonable accommodation are certainly adverse actions," Plaintiff does not cite to any authority to support these legal conclusions. Conclusory assertions, without any *legal* argument in support, need not be addressed. *See Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion . . . (without even a citation to the record) will be deemed waived."); Local Rule 7.1(c) ("Every motion . . . shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion."); *see also Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("[A] passing reference to an issue . . . will not suffice to bring that issue before [the] court." (citation omitted)).

On top of these shortcomings is a pervasive and concerning lack of attention to detail.

7

Plaintiff's briefing is replete with drafting errors, *e.g.*, "Def*3*endant's Statement of Undisputed Facts. . ."; "there is a genuine issue of material fact as to wheth*rt54<>>>>*er. . ."; "Because Plaintiff seeks to prove *his* retaliation and disparate treatment claims through indirect evidence *his* retaliation claim. . ."; "for the foregoing reasons, *,* motion for summary judgment should be denied. . ."; "In the case sub *judcie*. . ." (emphases added). As to substance, Plaintiff's briefing repeatedly refers to Title VII, even though Plaintiff has not brought any claims pursuant to Title VII. As a result of this confusion, Plaintiff argues that her sex is a protected class for the purpose of her discrimination claims, even though Section 1981 applies only to racial discrimination—not sex discrimination. *See Anjelino v. New York Times Co.*, 200 F.3d 73, 97-98 (3d Cir. 1999).

While Plaintiff's failure to support her factual assertions and arguments in the body of her briefing with citations to materials in the summary judgment record and relevant legal authorities would be sufficient on its own to grant summary judgment in favor of Defendant, Plaintiff's case fails on the merits as well.

### B. Section 1981

#### i. *Disparate Treatment*

Under the *McDonnell Douglas* framework, to make out a *prima facie* case of discrimination under Section 1981, Plaintiff must show that "1) she is a member of a protected class; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) that action occurred under circumstances giving rise to an inference of discrimination." *Sherrod v. Philadelphia Gas Works*, 57 F. App'x 68, 73 (3d Cir. 2003) (citing *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999)).

Defendant focuses its briefing on the third element, arguing that Plaintiff suffered no adverse employment action because Defendant offered to rehire her through the "last chance

agreement," which Plaintiff refused to sign, meaning her termination remained in effect. This argument is not availing. Termination is an adverse employment action. *See, e.g.*, *Sherrod*, 57 F. App'x at 73; *Dove v. Cmty. Educ. Centers Inc.*, 2012 WL 5403508, at *4 (E.D. Pa. Nov. 5, 2012) ("Termination, however, is the quintessential adverse employment action. . . ."); *see also Fowler v. AT&T, Inc.*, 19 F.4th 292, 300 (3d Cir. 2021) (even the notice of termination may constitute an adverse employment action). Defendant points to no authority supporting that termination is not an adverse employment action where the employee is offered reinstatement through an agreement like the "last chance agreement" here.[6] *Cf. Bagley v. Bel-Aire Mech. Inc.*, 647 F. App'x 797, 800 (9th Cir. 2016) (concluding termination is an adverse employment action "even when an employee has the opportunity to be rehired within days"). Accordingly, this argument is not prevailing.

Nonetheless, Plaintiff has failed to satisfy the fourth element of her *prima facie* case because she does not provide evidence by which a reasonable juror could conclude that she was terminated, or faced any other adverse action, on the basis of her race in violation of Section 1981. The record is devoid of such evidence, and Plaintiff makes no convincing legal argument in support of her disparate treatment claim.

Instead, Plaintiff makes an incoherent argument, contending that she faced disparate

---

[6] Each of the authorities Defendant relies upon is quickly distinguishable from the situation at hand. *Yarnall v. Philadelphia Sch. Dist.*, 57 F. Supp.3d 410, 422 (E.D. Pa. 2014) (performance evaluations that had a "temporary nature" did not amount to adverse employment actions); *Rosati v. Colello*, 94 F. Supp.3d 704, 714-15 (E.D. Pa. 2015) (derogatory comments, an investigation "[w]ithout negative consequences," assignment of extra responsibilities, refusal to permit "one week of night work per month," and reassignment akin to a "lateral transfer" were not adverse employment actions); *Young v. St. James Mgmt., LLC*, 749 F. Supp.2d 281, 297 (E.D. Pa. 2010) (warnings were not adverse employment actions where they did not affect employment status); *Stranzl v. Delaware Cnty.*, 2014 WL 3418996, at *9-12 (E.D. Pa. July 14, 2014), *aff'd*, 604 F. App'x 210 (3d Cir. 2015) (office relocation, failure to transfer files to a new computer, and paychecks with incorrect amounts did not constitute adverse employment actions); *Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1141 (8th Cir. 2008) (employee not terminated but merely demoted to a lower role through temporary disqualification did not face adverse employment action).

treatment because "Defendant did not honor the reasonable accommodation granted by the FMLA."  By this, Plaintiff appears to refer either to the FMLA leave she was granted to be absent from work two to three times per month or to requests she made for different types of work assignments that may have been less physically demanding.  There are multiple problems with this argument: (1) providing a "reasonable accommodation" is an obligation under the ADA, and Plaintiff brings no ADA claims, *see, e.g.*, *Rinehimer v. Cemcolift, Inc.*, 2001 WL 111612, at *6 (E.D. Pa. Feb. 1, 2001), *aff'd*, 292 F.3d 375 (3d Cir. 2002) (distinguishing reasonable accommodation obligations under the ADA from FMLA leave provisions); (2) Plaintiff does not provide evidence supporting she made a request for a reasonable accommodation or was denied any such request; and (3) Plaintiff does not provide evidence creating a reasonable inference that any such denial was discriminatory.

Plaintiff also appears to argue that she faced disparate treatment in her work assignments, stating she was assigned to the "bottle line, the most taxing work assignment."  But Plaintiff has not provided any facts supporting an inference that this work assignment was the result of any discriminatory motive.  To the contrary, Defendant points to evidence—specifically an affidavit of Nadia Slayton, a human resources employee at Defendant—supporting that the work assignments were made randomly.  Nor, as Defendant observes, does Plaintiff point to any similarly situated individuals who were treated more favorably to raise an inference of discrimination.  *See, e.g.*, *Lin v. Rohm & Haas Co.*, 293 F. Supp.2d 505, 518 (E.D. Pa. 2003), *on reconsideration*, 301 F. Supp.2d 403 (E.D. Pa. 2004).

Accordingly, Plaintiff has failed to make a *prima facie* case for disparate treatment discrimination under Section 1981, and summary judgment is warranted in favor of Defendant on that claim.

### ii.   *Retaliation*

To establish a claim for retaliation in violation of Section 1981, Plaintiff must establish the following elements for her *prima facie* case: she engaged in protected activity; Defendant took an adverse employment action against her; and there was a causal connection between the protected activity and the adverse employment action.  *Castleberry*, 863 F.3d at 267.

Plaintiff claims that she was terminated "because of [Defendant's] resentment at her prior lawsuit and the fact that she had been granted light duty under the Family Medical Leave [A]ct. . . ."  As to the latter theory involving the FMLA, Plaintiff once again appears to confuse reasonable accommodations under the ADA and leave benefits under the FMLA, as discussed *supra*.  Moreover, Plaintiff did not bring a retaliation claim pursuant to the FMLA and cannot amend her Complaint now through an argument advanced in her briefing.  *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

As to the former theory involving the prior lawsuit, Plaintiff has not provided any facts, or legal argument, supporting a causal connection between her filing the prior lawsuit in 2016 and her termination in 2019.  Accordingly, Plaintiff fails to support an essential element of her retaliation claim pursuant to Section 1981, and summary judgment in favor of Defendant is warranted.

### iii.   *Hostile Work Environment*

To establish a hostile work environment claim under Section 1981, Plaintiff must demonstrate: "1) [she] suffered intentional discrimination because of [her] [race], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected [her], 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability."  *Castleberry*, 863 F.3d at 263 (citation omitted).

As a preliminary matter, to the extent Plaintiff relies on events in 2013 as the basis for her hostile work environment claim, those events are time-barred by the four-year statute of limitations for Section 1981 claims unless Plaintiff can support a continuing violation theory. *See Verdin v. Weeks Marine Inc.*, 124 F. App'x 92, 96 (3d Cir. 2005) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004)); *Heredia-Caines v. Lehigh Valley Hosp., Inc.*, 2020 WL 5232880, at *4 (E.D. Pa. Sept. 2, 2020).[7] But Plaintiff advances no legal argument that the continuing violation doctrine applies to the facts of this case. Accordingly, Plaintiff provides the Court with no basis to conclude that the events underlying the prior litigation are "part of the same unlawful employment practice" so as to constitute a continuing violation. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013).

With respect to the two events in 2019 (one African American employee being told to "shut up" and a different African American employee being slapped by a Hispanic employee), Plaintiff has failed to demonstrate multiple elements of her hostile work environment claim. Plaintiff was not directly involved in either event and has not otherwise provided facts supporting that she was detrimentally affected by the events. By the same token, Plaintiff has not provided facts supporting that she suffered intentional discrimination. Additionally, Plaintiff has not provided facts supporting these two events constitute "severe or pervasive" harassment. *Cf. Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp.2d 639, 649 (E.D. Pa. 2012), *aff'd*, 565 F. App'x 88 (3d Cir. 2014) (discriminatory conduct supporting a hostile work environment claim must be "so extreme as to amount to a change in the terms and conditions of employment" and "off-hand comments and isolated incidents are insufficient" unless they are "extremely severe").

---

[7] Neither party addresses whether the settlement of the 2016 lawsuit prevents Plaintiff from relying on the events in 2013 for her hostile work environment claim in the instant suit. On that basis, the Court does not address the issue here, where Plaintiff's hostile work environment claim otherwise fails, as discussed *supra*.

Accordingly, Plaintiff has failed to support her hostile work environment claim under Section 1981, and summary judgment in favor of Defendant is warranted.

### C. FMLA Interference

To make a claim of interference under the FMLA, Plaintiff must establish:

> (1) [she] was an eligible employee under the FMLA; (2) [Defendant] was an employer subject to the FMLA's requirements; (3) [she] was entitled to FMLA leave; (4) [she] gave notice to [Defendant] of [her] intention to take FMLA leave; and (5) [she] was denied benefits to which [she] was entitled under the FMLA.

*Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (citation omitted).

While Plaintiff alleges in her Complaint that "Defendant interfered with [her] taking of leave," there is no record evidence supporting that she was denied any FMLA leave she requested. Instead, as discussed *supra*, Plaintiff advances an incoherent argument about the purported denial of a reasonable accommodation, apparently confusing the FMLA with the ADA. *See, e.g.*, *Rinehimer*, 2001 WL 111612, at *6 (distinguishing reasonable accommodation obligations under the ADA from FMLA leave provisions). Nor does Plaintiff point to any facts supporting that her termination was related to the exercise of her FMLA rights or make any legal argument to that effect. *Cf. Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 312 (3d Cir. 2012). In short, Plaintiff has not demonstrated Defendant interfered with any benefits she was entitled to under the FMLA, and summary judgment in favor of Defendant is warranted with respect to her FMLA claim.

An appropriate order follows.

BY THE COURT:

/s/Wendy Beetlestone, J.

_____
**WENDY BEETLESTONE, J.**